UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Mar-Ya J. Zuke,

   Plaintiff,                 Case No. 1:13cv403

  v.                      Judge Michael R. Barrett

American Airlines, Inc.
Long-Term Disability Plan, *et al.*,

   Defendants.

## OPINION & ORDER

This matter is before the Court upon Plaintiff Mar-Ya J. Zuke's Motion for Judgment as a Matter of Law (Doc. 20) and Defendant American Airlines, Inc. Long-Term Disability Plan's Motion for Judgment as a Matter of Law (Doc. 21). These motions have been fully briefed. (Docs. 22, 23, 24, 25).

Plaintiff Mar-Ya Zuke brings this action under Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001, *et seq.* based on the denial of long-term disability benefits. The parties filed the current motions pursuant to *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609 (6th Cir. 1998).

### I. BACKGROUND

Plaintiff is a former Sales & Service Representative who worked in American Airline's Central Reservations Office in Cincinnati, Ohio. Plaintiff was a participant in American Airlines' long-term disability plan ("Plan"). Due to injuries from a car accident, Plaintiff's last day of work was December 16, 1998. Plaintiff received salary continuance and short-term disability benefits for a period of time, and then began

receiving long-term disability benefits on April 17, 1999. (Doc. 19, AR-0002). Under the Plan, "total disability" is defined as:

> After 24 months for which benefits are payable, you are considered totally disabled if you are not gainfully employed in any type of job for any employer or are unable to engage in major and substantial duties of any occupation or employment for wage or profit for which you have become reasonably qualified by training, education, or experience.

(AR-0741).

Plaintiff continued to receive benefits under the Plan for thirteen years, until April 19, 2012. (AR-0002). Under the Plan, Plaintiff was "required to provide additional medical information or submit to periodic physical exams to confirm continuing disability." (AR-00743).

MetLife acted as claims administrator for the Plan. In a letter dated April 19, 2012, MetLife explained that Plaintiff was required to submit certain information to their office as part of the ongoing review of Plaintiff's claim for long term disability ("LTD") benefits. (AR-0459). MetLife explained that while it had received some of the requested records in its office:

> On March 27, 2012 we received the last 2 pages (only) of the Attending Physician's Statement completed by Dr. Fieher.
>
> Our attempts to reach you by phone on March 27, 2012 and April 4, 2012, were unsuccessful.
>
> As a courtesy to you, we contacted Dr. Fieher's office on April 2, 2012 and April 4, 2012 and were advised by Sarah that they had sent all pages of the form that they had received. They indicated that they would need another form to complete."
>
> Based on the limited medical information currently received, we are unable to determine the severity of your conditions, the extent of your treatment or the level of your functionality. As such, there is no medical information on file to substantiate an ongoing total disability as defined by the Plan and your claim has been closed as of April 19, 2012.

2

(AR-0460).  On April 23, 2012, Plaintiff provided additional documents and requested a review of this decision.  (AR-0462).

On June 12, 2012, a Physician Consultant Review was conducted with by Avrom Simon, who is Board-certified in Occupational and Environmental Medicine.  (AR-0506-0509). Dr. Simon did not examine Plaintiff, but only provided a file review.  Dr. Simon reviewed Plaintiff's medical records and summarized the information.  (Id.)  It was Dr. Simon's opinion that:

> The only objective data in this file to support any pathology in this patient is her history of a prior cervical spine fusion from 2000.  Circumstances surrounding the need for this procedure are absent, but data suggest that the patient developed a "failed cervical surgery syndrome," as a result of the surgery, leading to chronic neck pain.
>
> . . .
>
> There are allegations of chronic low back pain which seems to be predicated on a lumbar MRI from 2/3/09, which notes only degenerative change with disc protrusions.
>
> There are few actual examinations of this patient in this file and those that are provided detail next to nothing that is objectively abnormal. . . .
>
> There is no documentation of any restrictions in range of motion of any joint, in the axial skeleton or spine. There is no documentation of gait or coordination impairment. There is no documentation of any weakness, sensory problem or any other sort of neurological deficit.  There is no documentation of poor motor bulk or tone, or muscular atrophy, to suggest that the patient was as dysfunctional as is being asserted.
>
> Given the available data to review, the available objective medical documentation does not support any restrictions/ limitations that would prevent the claimant from performing the level of work capacity that she was performing prior to leaving work.

(AR-0508).

In a letter dated June 25, 2012, MetLife denied Plaintiff's benefits again. (AR-

3

0510). MetLife explained: "The clinical review along with the Independent File Review concluded that the medical information on file supports your ability to not only be able to perform the regular duties of your previous occupation as a Reservation Agent, but that you would be capable of performing any occupation, as defined by the Plan." (AR-0511).

Plaintiff appealed this decision and submitted a number of documents, including the medical opinions and records from the following providers: (1) Dr. Janalee Rissover, a specialist in rehabilitative medicine, who performed a comprehensive review of Plaintiff's file and conducted a physical exam of Plaintiff on July 11, 2012. Dr. Rissover also ordered cervical and lumbar spine MRIs and met with Plaintiff on August 15, 2012 to review the results; and (2) Dr. Onassis A. Caneris, who examined Plaintiff on September 11, 2012 and gave Plaintiff a lumbar epidural injection on September 27, 2012. (AR-0352-0594).

During the exam, Dr. Rissover noted mild to moderate restrictions in Plaintiff's range of motion in her cervical, thoracic, and lubrosacral spine, while muscle strength and tone was normal. (AR-0562). After reviewing Plaintiff's MRIs, Dr. Rissover noted: "In the cervical region, she has some mild spinal stenosis, but the foraminal stenosis is worse on the left . . . . On the lumbar MRI the patient again has fairly extensive degenerative disc disease, but the only new finding was a new disc herniation at T12-L1." Dr. Rissover limited Plaintiff to sitting one hour to one and 1/2 hours during a work day. (AR-0549). Dr. Rissover stated Plaintiff could walk only 100 feet or less and, before walking another 100 feet, she would need to rest for over one hour with her feet elevated. (Id.)

Dr. Caneris noted Plaintiff had a reduced range of motion over the right shoulder with positive straight leg raise bilaterally, right more so than the left. (AR-0087). Dr. Caneris also noted that Plaintiff has cervical pain, cervical radiculopathy on the right side, and cervical post-laminectomy syndrome. (Id.)

Plaintiff also provided a report by William T. Cody, MS, a Diplomat of the American Board of Vocational Experts. Cody reviewed Plaintiff's medical records and Dr. Rissover's clinical limitations.[1] Cody concluded Plaintiff: "is permanently and totally occupationally disabled. That is, due to her recognized conditions, she is unable to perform the material duties of her former occupation or any other occupation for which she is, or may reasonably become, qualified based on her education, training, or experience. She is precluded from performing full-time work activity." (AA-0072).

On March 25, 2013, at MetLife's request, a report was prepared by Dr. Siva Ayyar, who is Board-certified in Occupational Medicine. (AR-0617-0624). Dr. Ayyar stated: "Given the lack of concordant MRI findings, it is difficult to support restrictions as proscriptive that [*sic*] suggested by Dr. Rissover." (AR-0622). Dr. Ayyar also stated:

> I would likewise take exception to Dr. Rissover's comment that the claimant needs to recline or lie down when she develops pain. At this point, maintaining an appropriate level of activity is part and parcel of the claimant's recovery. Returning to work is not medically contraindicated. Returning to work would, in fact, likely ameliorate Ms. Zuke's ongoing complaints of pain.

(AR-0622). Dr. Ayyar concluded "based on [his] review of Ms. Zuke's file, the developed medical record, weight of medical evidence, and medical reports . . . do not substantiate or support her contention that she is totally disabled from performing the

---

[1] The documents provided to Cody were (1) the 6/25/12 denial letter; (2) the 7/10/12 office note of Dr. Fiehrer; (3) the 7/11/12 report of Dr. Rissover; (4) the 9/11/12 report of Dr. Caneris; and (5) the 10/31/12 medical assessment questionnaire completed by Dr. Rissover. (AR-0070).

5

essential functions of any (sedentary) occupation for which she is otherwise qualified by education, training or experience as of the timeframe under review, 04/20/2012 to present." (AR-0620).

Another report was prepared at MetLife's request by Dr. Arousiak Varpetian, M.D., who concluded:

> The available clinical information does not support that she is totally disabled from performing the duties of any occupation (for which she is/has become reasonably qualified by training, education, or experience, as of April 20, 2012 as defined by the LTD plan.  The records have not [*sic*] documentation of any neurological abnormalities, which would cause the claimant impairment.  The claimant is diagnosed with cervical and lumbar radiculopathy, but examination does not reveal any sensory, motor, or reflex changes in a radicular pattern.  Imaging studies show minimal foraminal stenosis not corresponding to the painful area.

(AR-0628).  Dr. Varpetian also disagreed with the restrictions set forth by Dr. Rissover. (Id.)  Dr. Varpetian explained: "From a neurological perspective, no neurological abnormalities are documented."  (Id.)

The Pension Benefits Administration Committee ("PBAC") delegated authority and responsibility for pension appeals to Mary Anderson, Managing Director, Benefits and Productivity.  (AR-0811).  Anderson considered Plaintiff's appeal, the information submitted by Plaintiff and the opinions of Drs. Varpetian and Ayyar.  (AR-0001- 0012). Anderson decided:

> In view of the consultants' findings, and in the absence of objective medical/clinical evidence to substantiate total disability from any occupation as defined by the LTD Plan, the PBAC finds that MetLife's termination of Ms. Zuke's LTD benefits effective April 20, 2012, to be appropriate.  As such, Ms. Zuke's disability status does not meet the LTD Plan criteria for continuation of LTD benefits beyond April 19, 2012, and the appeal is denied.

(AR-0011).  This decision was communicated to Plaintiff's counsel in a letter dated April

6

9, 2013.  (AR-0013-0024).

## II. ANALYSIS

### A. Standard of review

The parties disagree as to the proper standard of review.  The review of the decision of a plan administrator is *de novo* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)).  However, if an ERISA benefits plan "gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan," the decision to deny benefits is reviewed under an "arbitrary and capricious" standard of review.  *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 291-92 (6th Cir. 2005) (quoting *McDonald v. Western–Southern Life Ins. Co.*, 347 F.3d 161, 168 (6th Cir. 2003).  Defendants argue that the decision to deny benefits should be reviewed under that arbitrary and capricious standard.  Defendants cite the following language in the Plan:

> In carrying out their respective responsibilities under the plan, the plan administrator and other fiduciaries shall have discretionary authority to interpret the terms of the plan and to determine eligibility for and entitlement to plan benefits in accordance with the terms of the plan.

(AR-0782).

Plaintiff argues that even though the Plan contains this discretionary authority language, when an unauthorized individual or entity determines benefits, the arbitrary and capricious review is not warranted.  However, here the Plan procedures were followed.  The Plan provides that appeals will be heard by the PBAC or its designee. (AR-0768).  The PBAC delegated its authority to Mary Anderson. (AR-0811).  Acting in

her capacity as Plan fiduciary, Anderson decided Plaintiff's appeal. (AR-0011). *Cf. Sanford v. Harvard Indus.*, 262 F.3d 590, 597 (6th Cir. 2001) (decision to deny benefits made at meeting prompted by a union grievance and not by authorized body). Therefore, the decision to terminate benefits is reviewed under the arbitrary and capricious standard of review.

"The arbitrary and capricious standard is the least demanding form of judicial review of administrative action." *Calvert*, 409 F.3d at 292 (quoting *McDonald*, 347 F.3d at 169). Under this standard of review, this Court must determine "whether, in light of the plan's provisions, the plan administrator's decision was rational." *Id*. "[W]hen it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Id*.

B.  **Termination of benefits**

Defendants argue that Plaintiff failed to show she was disabled under the "any occupation" standard and the decision upholding the termination of benefits was based upon substantial evidence. Plaintiff argues that the termination of benefits was arbitrary and capricious.

First, Plaintiff argues that MetLife terminated Plaintiff's benefits before there was any medical evidence or vocational evidence to support termination. Plaintiff argues that the initial denial of benefits was based on a fax transmission problem. While the April 19, 2012 letter from MetLife references a problem with two pages of the Attending Physician's Statement completed by Dr. Fieher, the letter also explains that MetLife attempted to contact Plaintiff twice and Dr. Fieher's office twice. Later, on May 23, 2012, Dr. Fiehrer sent in his records and they were made a part of the record. (AR-

8

0478-0499). However, as the Sixth Circuit has explained: "[T]he ultimate issue in an ERISA denial of benefits case is not whether discrete acts by the plan administrator are arbitrary and capricious but whether its ultimate decision denying benefits was arbitrary and capricious." *Evans v. UnumProvident Corp.*, 434 F.3d 866, 876 (6th Cir. 2006) (quoting *Spangler v. Lockheed Martin Energy Sys., Inc.*, 313 F.3d 356, 362 (6th Cir. 2002)).

Plaintiff also argues that the termination of benefits was arbitrary and capricious because there is no evidence showing that Plaintiff's condition has improved, and there is no explanation of the discrepancy. Plaintiff points out that in 1999, the diagnoses causing her inability to work were sprains and strains-cervical spine, somatic dysfunction, fibromyalgia, and brachial neuropathy. Plaintiff argues that additional diagnoses of lumbar spondylosis, cervical/lumbar radiculopathy, post-laminectomy syndrome-cervical, depression, emphysema, and displacement of cervical intervertebral discs without myelopathy are noted in the documentation. (AA-0014). Plaintiff argues that virtually all of these medical conditions still exist.

Plaintiff relies on *Kramer v. Paul Revere Life Ins.Co.*, 571 F.3d 499, 507 (6th Cir. 2009), wherein the Sixth Circuit held that the cancellation of benefits in the absence of evidence showing that the claimant's condition had improved was arbitrary and capricious where no explanation existed for the apparent discrepancy from earlier assessments. However, the Sixth Circuit later clarified this decision:

> Surely it is reasonable to require a plan administrator who determines that a participant meets the definition of "disabled," then reverses course and declares that same participant "not disabled" to have a reason for the change; to do otherwise would be the very definition of "arbitrary and capricious." It does not follow, however, either logically or from our decision in *Kramer*, that the explanation *must* be that the plan

9

>administrator has acquired new evidence demonstrating that the participant's medical condition has improved.

*Morris v. Am. Elec. Power Long-Term Disability Plan*, 399 F. App'x 978, 984 (6th Cir. 2010) (emphasis in original). Here, Defendants have set forth specific reasons for the change, which were due in part to a lack of objective data. (AR-0011). The Sixth Circuit has explained that "[r]equiring a claimant to provide objective medical evidence of disability is not irrational or unreasonable." *Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157, 166 (6th Cir. 2007).

Next, Plaintiff argues that the termination of benefits was arbitrary and capricious because MetLife failed to perform a physical exam of Plaintiff even though the Plan requires a participant to undergo a physical exam.

The Sixth Circuit has held that the failure to conduct an examination where the Plan document gave the plan administrator the right to do so, "raise[s] questions about the thoroughness and accuracy of the benefits determination." *Helfman v. GE Group Life Assur. Co.*, 573 F.3d 383, 393 (6th Cir. 2009) (quoting *Calvert v. Firstar Fin. Inc.*, 409 F.3d 286, 296 (6th Cir. 2005)). However, "[t]here is nothing inherently improper with relying on a file review, even one that disagrees with the conclusions of a treating physician." *Calvert*, 409 F.3d at 297. Here, the file review was adequate. Both Drs.Ayyar and Varpetian listed the records which were provided for their review. (AR-0617, AR-0626). Plaintiff has not argued that Drs.Ayyar and Varpetian ignored test results which were favorable to her. Instead, Plaintiff disagrees with the interpretations Drs.Ayyar and Varpetian have given to the test results.

Plaintiff also argues that it is inappropriate for a plan administrator to ignore a Social Security Administration ("SSA") award of benefits in making benefit

determinations, especially when the claimant, like Plaintiff, was required to apply for SSA benefits. It is well-established that if the plan administrator has encouraged plan participants to apply for SSA disability benefits, and then chooses not to explain why the SSA's determination did not impact the plan's benefits decision, "the reviewing court should weigh this in favor of a finding that the decision was arbitrary or capricious." *Bennett v. Kemper Nat. Servs., Inc.*, 514 F.3d 547, 554 (6th Cir. 2008) (citing *Glenn v. MetLife*, 461 F.3d 660, 669 (6th Cir. 2006) ("Having benefitted financially from the government's determination that [the plaintiff] was totally disabled, [the defendant] obviously should have given appropriate weight to that determination.")). However, the Plaintiff was found to be disabled by the Social Security Administration in 2001. The Sixth Circuit has explained that a Social Security finding is entitled to less weight when it occurred years before. *McCollum v. Life Ins. Co. of N. Am.*, 495 F. App'x 694, 703, n.9 (6th Cir. 2012) (citing *Morris v. Am. Elec. Power Long–Term Disability Plan*, 399 Fed.Appx. 978, 984 (6th Cir. 2010) (noting that the quasi-estoppel rationale underlying giving a Social–Security disability determination more weight is minimized when the disability determination occurred years before)).

Next, Plaintiff argues that neither Metlife nor American Airlines have identified what occupation Plaintiff can perform and why. However, the Sixth Circuit has held that "a plan administrator is not required to obtain vocational evidence where the medical evidence contained in the record provides substantial support for a finding that the claimant is not totally and permanently disabled." *Judge v. Metro. Life Ins. Co.*, 710 F.3d 651, 662-663 (6th Cir. 2013).

Plaintiff also argues that Defendants could not ignore the physical examinations

of Plaintiff's treating physicians. Plan administrators are not required to accord special weight to treating physicians' opinions. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 832 (2003). However, plan administrators are not permitted to "totally ignore" a treating physician's opinion. *Balmert v. Reliance Standard Life Ins. Co.*, 601 F.3d 497, 504 (6th Cir. 2010).

Here, the reports prepared by Drs. Ayyar and Varpetian specifically address the opinions of Dr. Rissover. While Drs. Ayyar and Varpetian disagreed with the opinion of Dr. Rissover, "[g]enerally, when a plan administrator chooses to rely upon the medical opinion of one doctor over that of another in determining whether a claimant is entitled to ERISA benefits, the plan administrator's decision cannot be said to have been arbitrary and capricious because it would be possible to offer a reasoned explanation, based upon the evidence, for the plan administrator's decision." *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 169 (6th Cir. 2003).

Finally, Plaintiff argues that she was denies a full and fair review because Defendants failed to provide her with the opportunity to review the paper reviewers' opinions before making a final decision. Under ERISA, the plan administrator must provide "accurate claims processing by insisting that administrators provide a full and fair review of claim denials." *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 115, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008). However, Plaintiff has not cited to any authority which would require the medical opinions of Drs. Ayyar and Varpetian to be provided to her before they were considered by the plan administrator.

### III. <u>CONCLUSION</u>

Based on the foregoing, Plaintiff Mar-Ya J. Zuke's Motion for Judgment as a

Matter of Law (Doc. 20) is **DENIED** and Defendant American Airlines, Inc. Long-Term Disability Plan's Motion for Judgment as a Matter of Law (Doc. 21) is **GRANTED**. This matter shall be **CLOSED** and **TERMINATED** from the active docket of this Court.

    **IT IS SO ORDERED.**

                                              */s/ Michael R. Barrett*
                                            JUDGE MICHAEL R. BARRETT